STATE of Missouri, Respondent,

v.

Raymond CARTER, Appellant.

No. WD 38486.

Missouri Court of Appeals,
Western District.

Nov. 24, 1987.

Sean D. O'Brien, Public Defender, S. Dean Price (argued), Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Stephen D. Hawke (argued), John M. Morris, Asst. Attys. Gen., Jefferson City, for respondent.

Before CLARK, C.J., and NUGENT and LOWENSTEIN, JJ.

## ORDER

NUGENT, Judge.

Defendant Raymond Carter appeals his convictions by a jury of first degree robbery, attempted first degree robbery and two counts of armed criminal action and the sentences imposed. He claims, among other complaints, that the prosecutor impermissibly used his peremptory challenges to strike two of three black jurors on the basis of their race. Defendant argues that by failing to quash the jury panel, the trial court denied him equal protection of the laws under the Fourteenth Amendment of the United States Constitution and *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and his Sixth Amendment right to an impartial jury composed of a cross-section of the community.

Defendant's first point, dispositive of this appeal, requires that we remand this cause to the trial court for completion of the evidentiary hearing it began on the validity of defendant's constitutional claim under *Batson*.[1] *State v. Antwine*, No. 67,-720 (Mo. February 17, 1987) (en banc) (interlocutory order of remand for hearing and determination of claim of racial discrimination in use of peremptory strikes).

Defendant was convicted of robbing three persons at gunpoint as they entered their parked car after leaving a night club in the Westport area of Kansas City. The victims identified the defendant as one of three robbers who assailed them shortly after 1:00 a.m. on July 21, 1985.

The circumstances surrounding the selection of the jury were as follows: The trial proceedings began on May 19, 1986, with the voir dire examination of thirty-six veniremen. Seven were excused for cause, leaving twenty-nine. Two more were arbitrarily excused to narrow the field to twenty-seven.[2] In selecting the twelve jurors and one alternate juror, the prosecutor and defense counsel each exercised peremptory challenges to remove six prospective jurors and one of three candidates for alternate juror.

The prosecutor used his peremptory challenges to strike two of three black prospective jurors, Maxine Amos and Kathleen McCormick. He also peremptorily challenged Myra Sawyer, a black candidate for alternate juror. Defense counsel struck the remaining black prospective juror, Ernestine Burch.

At that point, defendant, a black man, moved to quash the jury panel on the ground that the prosecutor's use of peremptory challenges amounted to purposeful racial discrimination in the selection of the jury in violation of the rule in *Batson v. Kentucky, supra,* and the Sixth and Fourteenth Amendments to the United States Constitution. The trial court noted that the *Batson* case—decided just nineteen days earlier—provides a trial judge with little guidance in determining what circumstances constitute a prima facie case of purposeful discrimination that serves to shift the burden to the prosecutor to come forward with a racially neutral explanation for exercising the questioned peremptory challenges. The judge then said,

---

1. Though defendant made a contemporaneous objection at trial on Sixth Amendment grounds and briefed that argument on appeal, he did not address that issue in his motion for new trial and, therefore, failed to preserve that point for appeal. *State v. Applewhite*, 637 S.W.2d 312, 313 (Mo.App.1982). *See also State v. Tatum*,

653 S.W.2d 241, 243 (Mo.App.1983). Accordingly, we consider defendant's claim of improper jury selection on equal protection grounds.

2. Linda Hall and Edmond Cox were excused simply because their names were last on the list of remaining veniremen.

[S]ince it isn't clear, I think I'm going to find that, under the evidence, it isn't— the defense hasn't proved a pattern of discrimination. But if I were the prosecutor, in case my ruling on that is held to be wrong, I would certainly consider whatever reasons you have for striking these particular black jurors.

At the court's urging, the prosecutor gave the following reasons for exercising peremptory challenges against Maxine Amos and Kathleen McCormick:

My striking Maxine Amos was because she didn't answer any questions during voir dire, while I was up talking, and she looked away and acted like she didn't care anything about the case, the same as to Mrs. Beebe.[3] That was No. 24, Maxine Amos.

As to juror No. 30, Kathleen McCormick, she was single; she was in her twenties. I didn't feel that she would be a good juror. I felt that she didn't talk up during voir dire. She didn't answer any questions. Only questions she answered were individual questions. I did not like her.

At that point, defense counsel asked how the prosecutor could fault Ms. McCormick for not having something in her past that could make her a biased juror. The prosecutor responded,

It's the same as anybody else, I can name you three of the white jurors that I struck for that very reason, who didn't talk up during voir dire and who slouched and who didn't seem concerned about the case.

The prosecutor volunteered that he exercised a peremptory challenge against prospective alternate juror Myra Sawyer because she knew Jessie Williams, a defense witness in the case.[4]

Then the judge overruled defendant's motion to quash the jury. When asked to explain his grounds, the judge replied, "Somebody is going to have to find out what this damned opinion means. You don't find that out by quashing the panel."

At that point, the assistant public defender asked whether the court considered the reasons for striking Maxine Amos and Kathleen McCormick given by the prosecutor to be the neutral factors contemplated by the *Batson* court. The following exchange took place:

THE COURT: How would that be helpful?

MR. BERRIGAN: Well, because—of course, the defense argument is that those aren't neutral factors, that Mr. O'Connor can say that about any juror. In fact, that's the whole slant of this opinion, that prosecutors in the past have done just what Mr. O'Connor has done; they have not offered any explanation because they have not had to. Therefore, now an explanation is required, something on the record, other than his opinion, about whether or not somebody slouched in their chair or intentionally failed to answer a question.

If the Court decided that those were not neutral factors, that is, the things that Mr. O'Connor mentioned, then certainly that couldn't be a basis for the Court failing to sustain the defendant's motion.

THE COURT: I think that you haven't made the prima facie case, but I'm not sure. I think he has stated neutral reasons, but I'm not sure.

Does that help you on appeal?

MR. BERRIGAN: Not terribly. Thank you, Judge.

## I.

To establish a prima facie case of purposeful discrimination in the selection of

---

**3.** The prosecutor had earlier stated that he struck Ms. Beebe, who is white, for similar reasons: "I just didn't like her. She was single. She kind of slouched down there. I don't have any definable reason why. I just didn't like her. She slouched in her chair. She was single. She looked like she didn't care anything about the case, so I struck her."

**4.** Defense counsel stated for the record that he had stricken the remaining black prospective juror, Ernestine Burch, because Ms. Burch was on the membership committee of the Central Patrol Division Citizen's Crusade Against Crime.

the petit jury based on the prosecutor's exercise of peremptory challenges, *Batson* requires three elements:

> [T]he defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida, supra,* 430 U.S. [482] at 494, 97 S.Ct. [1272] at 1280 [ (1977) ], and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia, supra,* 345 U.S. [559] at 562, 73 S.Ct. [891 at] 892 [ (1953) ]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

106 S.Ct. at 1723.

The *Batson* court (at 1723) left the determination of whether a defendant had established a prima facie case to the discretion of the trial judge, with only the following guidelines:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory

purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

If the trial judge determines that the defendant has made a sufficient prima facie showing, the burden shifts to the state to come forward with a racially neutral explanation for challenging black jurors. *Id.* Although "the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause," the prosecutor may not rebut the defendant's prima facie case of discrimination "by stating merely that he challenged jurors of the defendant's race on the assumption—or his intuitive judgment—that they would be partial to the defendant because of their shared race." *Id.* Neither may the prosecutor satisfy his burden by denying that he had a discriminatory motive or "affirming his good faith in individual selections." *Id.* The prosecutor's neutral explanation must be related to the particular case to be tried. *Id.* Moreover, the explanation must be "clear and reasonably specific," and must contain "legitimate reasons" for exercising the challenges. *Id.* at 1723 n. 20. At that point, the trial court will be obliged to determine whether the defendant has established purposeful discrimination. *Id.* at 1723.

In the present case, defendant argues that he has met the first and second elements of his burden: The record shows that he is black and that the prosecutor exercised peremptory challenges to exclude two black members of the venire from the jury.[5] To satisfy the third requirement, defendant argues that the prosecutor's dis-

---

**5.** *Batson* does not require that all black jurors be stricken for the defendant to establish his prima facie case. *See Fleming v. Kemp,* 794 F.2d 1478, 1483 (11th Cir.1986) ("We cannot agree that *Batson* may be rendered a priori inapplicable by a prosecutorial game of numbers.") In *Fleming,* the court found that the defendant made out, at the minimum, a colorable *Batson* claim where the prosecutor used his

peremptory challenges to strike eight of ten blacks from a venire consisting of fifty-five people (after challenges for cause). *Id.* at 1484. *See also United States v. Love,* 815 F.2d 53, 55 (8th Cir.1987) (affirming the district court's ruling that the trial court properly rebutted defendant's prima facie case based on the exclusion of the sole black venireman).

criminatory purpose can be inferred by the elimination of a disproportionate number of available blacks from the venire and because the prosecutor did not consistently apply across racial lines his articulated reasons for striking the black members.

To illustrate his first premise, defendant marshals statistics to show that the prosecutor excluded two of three available blacks, or 66.7%, and only four of twenty-one available non-blacks, or 19.3%. To support his second point, defendant states that while the prosecutor claimed to have challenged Maxine Amos because "she didn't answer any questions during voir dire" rather than because she is black, he did not exclude Norma Couch or David Harms, both white, from the venire for the same reason. Moreover, defendant argues that of the reasons given by the prosecutor for striking Kathleen McCormick, only one is verifiable—that she only answered questions specifically addressed to her on voir dire.[6] First, she answered that her father had served as a juror years ago, a factor that she believed would not affect her ability to perform her duties as a juror. Defendant points out that venireman Gary Meiser, a white male, responded in like fashion to the same question—his only response during voir dire—and was not peremptorily challenged by the prosecutor. In response to a second question, Ms. McCormick described her duties as a unit manager at Mutual Benefit. Defendant notes that two other members of the venire answered questions about their employment as their only responses during voir dire examination. Nevertheless, the prosecutor struck neither Bonnie McLaird, a white female, nor Leo Maimer, a white male.

In the present case, the trial judge, justifiably frustrated by the language of the newly issued *Batson* decision, was uncertain whether defendant had established a prima facie case of purposeful discrimination. Without making any findings of fact or conclusions of law on the issue, the judge denied the defendant's motion to quash the jury panel in order to elicit guidance from this court in implementing the rule in *Batson.*

We are, however, bound by *Batson* and the case law that has developed in its wake to reserve our judgment until the trial judge has exercised his own. The *Batson* court (at 1723) entrusts to the discretion of the trial court the determination of whether the prosecutor's use of peremptory challenges creates a prima facie case of discrimination. If so, the burden shifts to the prosecution to come forth with a racially neutral explanation of excluding black jurors. The trial judge then has the duty to determine whether the defendant has established purposeful discrimination. *Id.*

As stated in *United States v. Mathews,* 803 F.2d 325, 330 (7th Cir.1986),

For purposes of review on appeal, *Batson* reminds us that " 'a finding of intentional discrimination is a finding of fact' entitled to appropriate deference by a reviewing court," and that, "[s]ince the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Id.* at 1724 n. 21. Thus, we may only reverse the trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination if that determination is clearly erroneous. *United States v. Tucker,* 773 F.2d 136, 142 (7th Cir.1985), *cert. denied,* 478 U.S. 1022, 106 S.Ct. 3338, 92 L.Ed.2d 742 (1986).

Here, the trial court attempted to make a record sufficient to support a *Batson* challenge without benefit of the procedural guidelines that have evolved in the year following the *Batson* decision. The Missouri Supreme Court considered the problem of appellate review of a *Batson* claim in *State v. Antwine, supra.* There, the court in remanding the case to the trial court directed it to render findings of fact

---

**6.** The prosecutor stated that he excluded Ms. McCormick because she was single and in her twenties; he felt she would not be a good juror; she did not "talk up during voir dire" but instead answered only questions posed to her directly; and because the prosecutor "did not like her."

and conclusions of law as to whether defendant has established a prima facie case of purposeful discrimination and whether the state has presented a racially neutral explanation for using its peremptory challenges to strike black veniremen. *Cf. Mathews, supra,* 803 F.2d at 330–32.

In *Mathews,* the Seventh Circuit emphasized the necessity of a fully developed record for the purpose of meaningful appellate review. That court saw no reason to overturn as clearly erroneous the district court's denial of defendant's motion for mistrial under *Batson* in light of the thoroughly developed record supporting the court's decision. What was essential to the reviewing court is that the lower court had satisfied itself that the government's explanation "contained legitimate reasons, was clear, was reasonably specific, and was related to the particular case." *Id.* at 332.

There, the prosecutor had peremptorily struck all three black members of the venire for the following reasons: The first, Mrs. Switzer, had grave reservations about her ability to fairly appraise covert tape recordings. As to the second, Mrs. Phenix, her late arrival and general inattentiveness seemed to convey a lack of commitment to the importance of the proceeding. The third, Mr. Declinton, appeared to examine the prosecutor in a rude and hostile way, leading her to suspect that he would be either very strongly in support of the government's position or very strongly against it. The prosecutor also explained that she gained no advantage from excluding blacks and would have preferred to have some blacks on the jury because not only was the defendant black, the government's chief witness was also black.

At that point, the court began to weigh the factors put forth by both sides and the surrounding circumstances. The judge noted that Mrs. Switzer's hesitant responses to the court's inquiry following the venireman's initial objection to covert taping convinced him that the peremptory strike was "well justified." *Id.* at 331. With respect to Mrs. Phenix, the court agreed that by her tardiness, her posture and demeanor, she had demonstrated "a pointed disinterest in the proceedings." The court noted, however, that the prosecutor's explanation for striking Mr. Declinton was subjective and not based on factors that the court had also observed. Nevertheless, the court (at 332) accepted the explanation as neutral in light of other surrounding circumstances:

> The court noted that the key witnesses for both sides in this case were black, which would discount any advantage that a discriminating prosecutor might perceive in striking blacks from the jury. The court noted that there was no evidence that the prosecution had maintained a pattern or practice of striking blacks from juries in cases where the defendants are black, and further commented that the court's personal experience showed the contrary. Finally, the court noted that the demeanor of the prosecutor while exercising her peremptory challenges and the time she took in so doing indicated that she was not simply striking venireman [sic] because they were black but was engaged in a careful process of deliberation based on many factors.

*See also State v. Butler,* 731 S.W.2d 265 (Mo.App.1987).[7] *Cf. Garrett v. Morris,* 815 F.2d 509 (8th Cir. April 3, 1987).

On the authority of *State v. Antwine, supra,* we remand the present case so that the trial court may finish the task it began. We direct the trial court to conduct an evidentiary hearing for the purpose of determining the validity of defendant's equal protection claim under *Batson,* and after the hearing, to certify to this court its findings of fact and conclusions of law as to whether defendant has established a prima facie case of purposeful discrimination

---

7. This court saw no reason under *State v. Antwine* to remand the *Butler* case to the trial court for further proceedings. *Butler* is distinguishable from the present case in that the trial court assumed that the defendant had established a prima facie case of purposeful discrimination and then ruled that the prosecutor had stated neutral reasons for striking the black veniremen, thereby providing this court "something" to review. We commend to counsel and the trial court Judge Lowenstein's opinion in *State v. Butler* and the many recent cases it cites.

and whether the state has presented a racially neutral explanation for using its peremptory challenges to strike the black venirepersons. Upon receipt of the trial court's certified findings and conclusions, this court will take appropriate action consistent with the requirements of *Batson.*

All concur.