**UNITED STATES of America, Appellee,**

v.

**James William JENKINS, Jr., also known as Diamond, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Diamond Level COLEMAN, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Reevious G. HENDERSON, also known as Dexter Henderson, Appellant.**

**Nos. 94–1503, 94–2911 and 94–3069.**

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1995.

Decided April 11, 1995.

William E. Shull, Liberty, MO, argued, for appellant Jenkins.

John G. Schultz, Kansas City, MO, argued, for appellant Coleman.

David H. Johnson, Kansas City, MO, argued, for appellant Henderson.

William L. Meiners, Asst. U.S. Atty., Kansas City, MO, argued, for appellee.

Before WOLLMAN, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MURPHY, Circuit Judge.

DIANA E. MURPHY, Circuit Judge.

James William Jenkins, Jr., Diamond Level Coleman, and Reevious G. Henderson appeal their convictions related to drug trafficking.[1] They were convicted after a month long trial and sentenced to life in prison. On appeal they contend that the government violated their equal protection rights under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), by using peremptory challenges to eliminate minority members of the jury panel. Each of the appel-

---

**1.** Jenkins was convicted of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846, aiding and abetting the possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 371. He was also convicted of engaging in a continuing criminal enterprise in violation of Title 21, United States Code, Section 848(a), but this count was dismissed by the government before sentencing.

Coleman was convicted of conspiracy to distribute and possess with intent to distribute co-

caine and cocaine base in violation of 21 U.S.C. § 846 and conspiracy to launder monetary instruments in violation of 18 U.S.C. § 371.

Henderson was convicted of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. § 846 and aiding and abetting the possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2.

The jury was unable to reach a verdict regarding a fourth codefendant, Ronald Jenkins, and a mistrial was declared. He was retried and convicted in September 1994.

lants is African American. Henderson contends in addition that the district court[2] erred in admitting prejudicial evidence of his participation in a drug transaction he claims was unrelated to the charged conspiracy. We affirm.

The original jury panel at trial consisted of 65 people. It included five African Americans and one Native American. Two African Americans were stricken for cause by the defense, and one was never called forward because the jury was selected before his number was reached. At the time peremptory challenges were exercised, the venire panel consisted of 28 prospective jurors, including juror 18, who was an African American, and juror 33, who was a Native American. A separate panel of five prospective alternate jurors included juror 51, who was an African American.

The government exercised two of its six peremptory strikes to eliminate jurors 18 and 33 and its one alternate peremptory strike to eliminate juror 51. The resulting twelve member jury and three member alternate panel included no racial minorities.

After the jury was selected but before it was sworn, the appellants asserted a *Batson* challenge to the government's use of peremptory strikes against jurors 18, 33 and 51. The district court found that appellants had made a prima facie showing under *Batson* and asked the government to state its reasons for the strikes.

The government responded that it had stricken jurors 18 and 33 because they had scowled at the government attorneys and agents during voir dire and because their body language and facial expressions indicated disinterest in the proceedings. It felt they would not be good jurors given the length of the case and the issues involved. In response to the court's inquiry whether other potential jurors had been stricken for similar reasons, the government stated that jurors 13, 32, 37, and 38, all of whom were white, had been stricken because they seemed disinterested or for the attitudes they exhibited in court.

The appellants apparently believed that the government's explanation was pretextual. They argued to the court that what the government described as scowling was merely the jurors' normal facial expression and did not indicate anti-government attitudes. They pointed out that although the stricken white jurors had also been assertedly removed because of disinterest, the government did not claim that any of them had scowled.

The district court found that the government had stated a racially neutral explanation for challenging jurors 18 and 33 that was related to the particular case. It also found that the explanation was reasonable, noting that attorneys are allowed to make judgments based on their observations of the demeanor or body language of panel members, and that the court had no reason to believe the government's explanation was not credible. The court also reflected that counsel for the government and for the defense could be expected to vary in their assessment of juror demeanor because of their differing interests.[3] It found that the strikes had

2. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

3. The court commented:

[T]he attitude of the plaintiff in a criminal case and defendants in a criminal case could be very different about this question of disinterestedness. Particularly in cases projected to be as long as this one.

The Government in a case of this length, it seems to me, could legitimately have rather high up on its list their impression of the potential attentiveness of panel members over a period of time, a lengthy period of time, in other words, what kind of attention span are they likely to have?

On the other hand, the defendants, it seems to me, could legitimately have an entirely different view of that matter. They would—might reasonably say, "The ideal jury from our point of view are folks who have trouble staying awake, because if they're not awake they're not going to hear what apparently is going to take the Government several weeks to put on. If they're not paying attention, then maybe when it comes around to making the decision, they won't remember a good percentage of the plaintiff's evidence and that can only help our clients in the long run."

So I don't think it's unusual that lawyers, as competent and as good as all the lawyers in this case are, shown the same person and their experience—their expression and their body

been made for legitimate reasons and concluded that they did not violate the appellants' constitutional rights.

The government stated that it had stricken alternate juror 51 because of statements she made during voir dire about unfair treatment of people she knew by the Federal Bureau of Investigation during a related case. Her articulated concerns about that case included wiretaps even though there apparently were none. The district court found the strike "entirely reasonable ... based on her response to the questions." He found the explanation to be race neutral and legitimate, concluding that the strike did not violate the principles of *Batson*.

On appeal, defendants' *Batson* challenge focuses on the government's strikes of jurors 18 and 33. They claim that the district court omitted the third step required by *Batson*, consideration of whether the government's stated reason was pretextual and whether purposeful discrimination by the government had been established. They allege the district court failed to consider the veracity of the government's asserted explanations. The government responds that the district court adequately and properly found that the strikes had not been motivated by race.

■ *Batson* claims are evaluated under a three part analysis. First, a defendant must make a prima facie showing that the prosecutor has stricken a potential juror because of race. Second, if such a showing is made, the burden shifts to the prosecutor to articulate a race neutral explanation for striking the prospective juror. Third, the district court must decide the ultimate question whether the defendant has proven purposeful discrimination. *United States v. Brooks*, 2 F.3d 838, 840 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1117, 127 L.Ed.2d 427 (1994); *see Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) (citing *Batson*). The district court's ultimate finding on the issue is set aside only if clearly erroneous.

*Hernandez*, 500 U.S. at 369, 111 S.Ct. at 1871.

■ When peremptory strikes are challenged, neutral explanations that are based on subjective assessments, such as a juror's demeanor or appearance, must be carefully scrutinized. *United States v. Sherrills*, 929 F.2d 393, 395 (8th Cir.1991). The attorneys should fully develop the record concerning the specific behavior by venire members that motivated the peremptory challenge, *United States v. Scott*, 26 F.3d 1458, 1466 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994), and the district court should assess the credibility of the explanation. *Elem v. Purkett*, 25 F.3d 679, 684 (8th Cir.1994). Because the district court is in the best position to evaluate the truthfulness of an asserted explanation, its findings should be accorded deference on appeal. *Hernandez*, 500 U.S. at 364, 111 S.Ct. at 1868–69.

■ Here, the government described specific behavior by jurors 18 and 33, such as scowling, that its attorneys and agents had observed and interpreted as disinterest. Defense counsel argued in response that they had seen no scowling. The district court did not make findings about these jurors' demeanor based on its own observations, but after considering the statements of counsel and their credibility, and after inquiring whether the government had stricken · any non-minority jurors for disinterest, the court found the explanations race neutral, legitimate, and reasonable. It concluded that *Batson* had not been violated. In doing so, it implicitly found there was a credible basis for the government to believe jurors 18 and 33 were disinterested and that the government's use of the peremptory challenges was not motivated by race.

Appellants suggested at oral argument that an evidentiary hearing should have been held in the district court. They say the government agents should have been put on the stand to testify about what they saw. They did not make this suggestion before the district court during arguments regarding

---

language and their attitude, would reach entirely different views about what they were seeing because their point of reference is so entirely different.

Tr. 50–51.

the *Batson* claim, however. At that time, when it would have been feasible to obtain testimony from those present at the voir dire, as well as from the challenged jurors, appellants made no attempt to call any witnesses or even to indicate that they thought testimony was required. Moreover, the record here does not show that an evidentiary hearing was necessary.

The claim that the trial court blindly accepted the government's explanation for the strikes and skipped step three of the analysis is not supported by the record. No doubt the district court could have more precisely tailored its specific findings to the three step *Batson* analysis and drawn them out more explicitly. After studying the record carefully, however, we conclude that the district court complied with the spirit of *Batson* and made sufficient findings to cover each required element. *Cf. United States v. Perez,* 35 F.3d 632, 636 (1st Cir.1994) (district court's failure to make express findings does not require reversal).

■ Appellants also argue that the government's facially neutral explanation for the strikes was mere pretext. Pretext can be shown by evidence that non-stricken white panel members share the characteristics of a stricken minority panel member. *Davidson v. Harris,* 30 F.3d 963, 965 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995). In this case, however, appellants do not assert that any non-stricken white panel members had scowled or appeared disinterested. The record here in fact shows that the white jurors who appeared disinterested, jurors 13 and 32, also were stricken by the government for that reason. Pretext can also be based on a finding that the factors used to explain the strike are irrelevant to a person's ability to perform as a juror in the particular case. *Elem,* 25 F.3d at 683. Appellants assert that facial expressions, including scowls, are not relevant to a juror's ability to function in that role. This ignores the government's explanation that it interpreted the scowls as signs of disinterest, an undesirable trait for a complicated case which would take a long time to present and which therefore required attentive jurors. Appellants also claim pretext can be implied from the totality of the circumstances in the case, including the fact that the empaneled jury was all white. The district court found, however, that the government exercised its strikes for legitimate reasons, and its findings are not clearly erroneous. *See Scott,* 26 F.3d at 1467; *Sherrills,* 929 F.2d at 395.

During the *Batson* hearing at the close of voir dire, the government explained to the court that it anticipated a long, complicated trial, was concerned about the ability of jurors to pay attention, and had challenged those jurors that appeared disinterested. The district court found that this concern motivated the government in striking the two minority panel members. Appellants have not established that the government made the strikes because of purposeful discrimination. Their *Batson* challenge thus fails.

■ Henderson also claims that the district court erred by admitting evidence of his involvement in a July 29, 1992 drug transaction that he claims is unrelated to the charged conspiracy. He argues that the admission of the evidence was inconsistent with earlier rulings that evidence of side deals would be inadmissible. As the government notes in response, this transaction was different from the side deals referred to in the earlier ruling. Henderson was charged in Count 5 of the indictment with involvement in the July transaction. Furthermore, the circumstances of the transaction indicated that it was an act in furtherance of the charged conspiracy.

We conclude that the district court did not clearly err when it overruled appellants' *Batson* challenge and also find no error in the district court's evidentiary rulings. Accordingly, the judgments of conviction are affirmed.