UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald E. HINTON, Sr., Defendant–
Appellant.

No. 95–3678.

United States Court of Appeals,
Seventh Circuit.

Argued July 10, 1996.

Decided Sept. 3, 1996.

Robert Lee Garrison (argued), Office of the United States Attorney, Criminal Division, Fairview Heights, IL, for Plaintiff-Appellee.

Terence Niehoff (argued), St. Louis, MO, for Defendant-Appellant.

Before POSNER, Chief Judge, and FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Defendant Donald E. Hinton, Sr., an African–American, raises a challenge under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), on appeal from a judgment entered on a jury verdict finding him guilty of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a), for which he was sentenced to 120 months' imprisonment.

During voir dire, the government used a peremptory strike to remove a black male juror, Ronald Porter (juror No. 20), from the panel, and defense counsel immediately objected. In a sidebar, the prosecutor indicated that Porter had worn a Malcolm X hat when he entered the courtroom, and had his arms folded across his chest at one point during voir dire. Defense counsel objected:

PROSECUTOR: Your Honor, the Government strikes number 20.

DEFENSE COUNSEL: I would ask the record to reflect that juror number 20 is a black man.

PROSECUTOR: No objection. May I ask that the record reflect that juror 20 came into court wearing a Malcolm X hat.

\* \* \* \* \* \*

THE COURT: There is something more to that?

PROSECUTOR: Well, I assume we're going to have a *Batson* motion. I want to make that point if we're going to have a *Batson* motion.

THE COURT: Well, this is the time to rule.

DEFENSE COUNSEL: I am making a motion then, Your Honor.

THE COURT: Your reason for that is?

PROSECUTOR: He came into court wearing a Malcolm X hat. I believe that indicates a potential for an attitude that is not favorable to the government. I can elaborate if you want me to. I also didn't like what I perceived as body language.

The Court may have noticed when the government was asked to stand up and introduce [its] case agent and [its] witnesses, juror number 20 folded his arms across his chest in a way that I interpreted to be a negative body language. Those are the two reasons I would cite to the court. DEFENSE COUNSEL: Well, I mean the fact that he wore a Malcolm X hat, which as I understand is a movie that was produced by Spike Lee and there are probably millions and millions of these hats all around the United States, and I would like to point out to the court that I own one. But as far as body language, I noted that there were several persons that had their arms crossed the entire length of the voir dire including, I believe juror number 12, which [sic] I struck, sat there with her arms crossed the entire time and there was one sitting behind me who had his arms crossed the entire time. Those are both white jurors. I think that these excuses given by the government are simply pretenses that deny my client and juror number 20, Ronald Porter, his right to sit on a jury free from racial bias.

THE COURT: All right. I think the Government has articulated a nonracial reason for striking juror number 20, so I deny your *Batson* motion. It is your turn.

The prosecutor's focus was on a perceived militant anti-government aspect of Malcolm X, not his race. The challenge is to a presumed extreme position, something that might interfere with one's ability to be open and unbiased, even in a trial that does not carry any particular ties to racial issues. *See United States v. Payne*, 962 F.2d 1228, 1233 (6th Cir.1992) (upholding finding that prosecutor's explanation was not pretextual where "government argues that it was not because of their race but because of the [NAACP and Black Caucus] advocacy groups to which they belonged that these two individuals were excluded" from the jury).

That is not to say a hat is always (or ever) an accurate or reliable indication of one's political stance. A prosecutor often must rely on the scant information available to him when making decisions about how to exercise the government's peremptory challenges.

The prosecutor does not necessarily have to provide a particularly *strong* reason for striking a juror—just a *nonracial* reason. In this case, there is nothing in the prosecutor's explanation that indicates he was doing anything but challenging jurors who might be predisposed not to convict if the evidence warranted such an outcome. The explanation is not an "implausible or fantastic" justification. *Purkett v. Elem*, —— U.S. ——, ——, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995). *See also United States v. Mathews*, 803 F.2d 325, 331–32 (7th Cir.1986) (upholding exclusion based on prosecutor's explanation that juror "was sitting directly to my right, ... and ... he spent a very great deal of time in examining me in a way which I felt was ... becoming rather hostile"), *rev'd on other grounds*, 485 U.S. 58, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988). *See generally* Albert W. Alschuler, The Supreme Court and the Jury: Voir Dire, Peremptory Challenges and the Review of Jury Verdicts, 56 U. Chi. L.Rev. 153, 175–76 (1989). We therefore hold that the district court did not clearly err in finding that the Malcolm X hat rationale was race neutral.

The prosecutor also relied on Porter's folded arms as a race neutral reason for striking him from the panel. Body language has long been used as a basis for peremptory challenges. *See, e.g., United States v. Forbes*, 816 F.2d 1006 (5th Cir.1987) (juror had arms crossed). *See also*, Robert A. Wenke, The Art of Selecting a Jury, at 64 (2d ed. 1989); James Rasicot, Jury Selection, Body Language & The Visual Trial (1983). We find no error in the conclusion that the reason given was race neutral.

The "science" of choosing jurors often depends on the intuitive senses of the attorneys, and the non-discriminatory exercise of that intuition has been long upheld by the courts. For example, it is proper to rely on such reasons as too little eye contact, *United States v. Cartlidge*, 808 F.2d 1064, 1070–71 (5th Cir.1987), or too much eye contact, *Mathews*, 803 F.2d at 330–31. *See also* Albert W. Alschuler, The Overweight Schoolteacher from New Jersey and Other Tales: The Peremptory Challenge after *Batson*, 25 Crim. L. Bull. 57, 61 (1988) (cataloguing

seemingly arbitrary, but judicially accepted, reasons for excluding minority jurors); Nancy J. King, Postconviction Review of Jury Discrimination: Measuring the Effects of Juror Race on Jury Decisions, 92 Mich. L.Rev. 63 (1993). There is a broad range of "educated guesses" in this area, and Malcolm X hats and crossed arms fall somewhere in the middle of this spectrum. *See, e.g., United States v. Hunter,* 86 F.3d 679, 683 (7th Cir. 1996) (no clear error where government relies on "gut feeling" and juror's acting "extremely nervous," "hesitant," and "unhappy"); *United States v. Briscoe,* 896 F.2d 1476, 1489 (7th Cir.1990) (accepting "intuitive assumptions that are not fairly quantifiable").

It is only necessary that a peremptory challenge "not be based on either the race of the juror or the racial stereotypes held by the party." *Georgia v. McCollum,* 505 U.S. 42, 59, 112 S.Ct. 2348, 2359, 120 L.Ed.2d 33 (1992). There is nothing in this record to show intent to discriminate. *Cf. Cochran v. Herring,* 43 F.3d 1404 (11th Cir.1995) (in habeas case, court upholds district court finding of *Batson* violation where former members of prosecutor's office testify that the office's philosophy was that black jurors should not be left on juries since they were generally considered anti-police and anti-establishment, and were particularly a problem where white victims were involved in the case).

And the court on appeal generally must defer to the district court's credibility findings. The district court judge here believed that the prosecutor's intent was not to discriminate on the basis of race, and those findings should be affirmed absent clear error. *See Hernandez v. New York,* 500 U.S. 352, 364, 111 S.Ct. 1859, 1868–69, 114 L.Ed.2d 395 (1991); *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. at 1724 n. 21. We have no reason to believe that this case is an exception to that rule. *Cf. e.g., United States v. Greer,* 968 F.2d 433, 437 (5th Cir.1992) *(en banc)* (Jewish veniremembers not constitutionally required to identify themselves even though defendants, allegedly members of a group of white supremacists, were charged with vandalizing Jewish temple and assaulting nonwhites in public park); *United States*

*v. Jenkins,* 52 F.3d 743, 747 (8th Cir.1995) (upholding district court finding of no *Batson* violation where juror's scowling was perceived as an anti-government attitude); *United States v. Payne,* 962 F.2d 1228, 1233 (6th Cir.1992) (upholding peremptory strike of juror on basis that he was a member of the NAACP). There are several indications in the record that the prosecutor had tried many cases before this judge, and that would certainly add to the judge's ability to judge the credibility of the prosecutor.

We also note other evidence pointing to a lack of discriminatory intent. The venire panel included 36 people, four of whom were African–American. The record does not reflect whether other minorities were present on the panel. Prior to the government's striking Porter, the district court excused one black woman (juror No. 16) for hardship. Defense counsel immediately commented on the court's action:

DEFENSE COUNSEL: Judge, I do want to make for the record—My client is a black male, and that juror 16 is a black female, and there are only four blacks in the entire panel. And by excusing juror number 16 it has lessened the number of African Americans that are left.

THE COURT: All right, you have preserved that on the record. Quite obviously the Court's reason for excusing the juror number 16 has no basis in her race.

DEFENSE COUNSEL: I am not suggesting that. I just wanted to make a record.

Because defense counsel clearly observed that both Ronald Porter and Juror No. 16 were black, it is reasonable to infer that if either of the two remaining African–American venirepersons were struck from the panel, defense counsel would have made a similar reference. Together with the fact that the government did not use all of its peremptory challenges, these circumstances clearly suggest the absence of discriminatory intent.

The judgment of the district court is AFFIRMED.