# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
November 14, 2006 Session Heard at Memphis[1]

# PATTI ZAKOUR v. UT MEDICAL GROUP, INC., & SCOTT CRAIG, M.D.

**Appeal from the Court of Appeals, Western Section**
**Circuit Court for Tipton County**
**Nos. 5234, 5500    Joseph H. Walker, Judge**

---

### No. W2003-01193-SC-R11-CV - Filed on January 22, 2007

---

The issue we review in this case is whether the Defendants exercised peremptory challenges during jury selection based on race and/or gender in a discriminatory manner contrary to the United States Supreme Court's holding in Batson v. Kentucky. The Defendants used six of their seven peremptory challenges to strike women from the jury panel, including the only African-Americans who were seated in the jury box. In response to the Plaintiff's race-based Batson challenge, the Defendants responded that one of the African-American women was dismissed because she had difficulty remembering the verdict in a previous civil jury case in which she had served as a juror and because she had a family history of cancer. As to the Plaintiff's gender-based Batson objection, the Defendants responded that the women were excused based on "experience and body mechanics." The trial court overruled the Plaintiff's objections and the trial proceeded. Following a defense verdict, the Plaintiff appealed, and the Court of Appeals affirmed the judgment. After careful review of the record and applicable authorities, we hold that the Defendants' stated reasons for exercising peremptory challenges to strike the African-Americans and women from the jury panel were insufficient to satisfy the requirements of Batson v. Kentucky. Because the trial court erred in overruling the Plaintiff's Batson objections, we reverse and remand this case to the trial court for a new trial.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed; Case Remanded**

SHARON G. LEE, SP.J., delivered the opinion of the Court, in which WILLIAM M. BARKER, C.J., and JANICE M. HOLDER, CORNELIA A. CLARK, and GARY R. WADE, JJ., joined.

---

[1]Oral argument was heard in this case on November 14, 2006, in Memphis, Shelby County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Daniel A. Seward, Memphis, Tennessee, for the appellants, Jacob Shores, Eric Nelson, Leif Nelson, and Misty Nelson.

John H. Dotson, Memphis, Tennessee, for the appellees, UT Medical Group, Inc., and Scott Craig, M.D.

**OPINION**

*I. Background*

On June 2, 1998, Patti Zakour visited the Family Practice Center ("the clinic") operated by the University of Tennessee Medical Group in Covington, Tennessee. While examining Ms. Zakour, resident Dr. Nancy Rockstroh discovered a mass, about 1.5 centimeters in diameter, in Ms. Zakour's right breast. Dr. Rockstroh consulted with her supervisor, Dr. John Kelly, and they referred Ms. Zakour for a mammogram. When the mammogram was performed two days later, Dr. Soheil Hanna, the examining radiologist, interpreted the mass in Ms. Zakour's breast as "probably benign" and recommended a follow-up mammogram in six months. Ms. Zakour returned to the clinic for a follow-up appointment on July 6, 1998. Testimony presented at trial differed as to the course of conduct recommended by Dr. Rockstroh and her supervising physician, Dr. Scott Craig, on that day. Dr. Rockstroh and Dr. Craig testified that they offered Ms. Zakour the options of a surgical referral to biopsy the mass in her breast or a close clinical follow-up to see if the mass changed over time. According to the Defendants, Ms. Zakour chose the second option but then failed to return to the clinic in three months as directed. Ms. Zakour denied being told this and returned to the clinic eight months later, complaining that the mass in her breast had become larger. Following a biopsy, Ms. Zakour was diagnosed with metastatic breast cancer.

On March 8, 2000, Ms. Zakour filed suit against Dr. Rockstroh, Dr. Craig, Dr. Kelly, UTMG a/k/a Family Practice Center ("UTMG"), Baptist Memorial Hospital-Covington, and Dr. Hanna. Ms. Zakour alleged that the defendants failed to timely diagnose and properly treat her breast cancer. At the time of the trial, only UTMG and Dr. Craig (collectively "the Defendants") remained as defendants in this case. Ms. Zakour died of cancer while this appeal was pending, and her four children were substituted as parties in this case. To simplify our discussion and avoid unnecessary confusion, we will refer to both Ms. Zakour and her children as "the Plaintiff."

The trial began on March 31, 2003. During jury selection, the Plaintiff made two objections pursuant to Batson v. Kentucky, 476 U.S. 79 (1986), claiming that the Defendants were using their peremptory strikes in a discriminatory fashion. The Plaintiff first alleged that the Defendants improperly removed African-Americans from the venire. The trial court requested that the Defendants provide a race-neutral explanation for the stricken jurors; after hearing from the Defendants, the trial court overruled the Plaintiff's first Batson objection. The Plaintiff later made a second Batson objection, this time based on the Defendants' use of peremptory challenges to remove women from the venire. The Defendants again denied any discriminatory intent, stating that

the strikes were based upon "experience and body mechanics." The trial court overruled the Plaintiff's second Batson objection and empaneled the jury.

The jury returned a defense verdict on April 2, 2003. The Plaintiff appealed, contending that the trial court erred in overruling the Plaintiff's Batson challenges; allowing a witness to testify who had not been identified before trial and limiting the Plaintiff's cross examination of that witness; incorrectly drafting the jury verdict form; and improperly instructing the jury regarding the standard of care. The Plaintiff also challenged the sufficiency of the Defendants' proof. After considering all of these issues, the Court of Appeals affirmed the decision of the trial court. We find the issues raised by the Plaintiff regarding jury selection to be dispositive of this appeal.

## II. Analysis

The issue we review in this case is whether the Defendants exercised peremptory challenges during jury selection based on race and/or gender in a discriminatory manner contrary to the United States Supreme Court's holding in Batson.

### A. Standard of Review

A trial court's determination of whether a peremptory strike is impermissibly based on gender or race is a factual conclusion which is entitled to great deference on appeal. Hernandez v. New York, 500 U.S. 352, 364 (1991) (plurality opinion); State v. Hugueley, 185 S.W.3d 356, 369 (Tenn. 2006). As we have stated, "determination of the prosecutor's discriminatory intent or lack thereof turns largely on the evaluation of the prosecutor's credibility, of which the attorney's demeanor is often the best evidence." State v. Smith, 893 S.W.2d 908, 914 (Tenn. 1994); Hugueley, 185 S.W.3d at 369 (quoting Smith, 893 S.W.2d at 914); see also State v. Jordan, No. M1999-00813-CCA-R3-CD, 2001 WL 1218314, at *5 (Tenn. Crim. App. Oct. 11, 2001) (citing Smith, 893 S.W.2d at 914). Therefore, we will not set aside a trial court's findings regarding discriminatory intent unless such findings are clearly erroneous. Hernandez, 500 U.S. at 364; Hugueley, 185 S.W.3d at 369; Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 906 (Tenn. 1996).

### B. Jury Selection Issues

### Race-based Batson Claim

In Batson, the U.S. Supreme Court reaffirmed its prior holding that a defendant's Equal Protection rights are violated when a prosecutor exercises a peremptory challenge to exclude a potential juror solely because of the juror's race. 476 U.S. 79, 89 (1986); see also Strauder v. West Virginia, 100 U.S. 303, 312 (1880). Marking a change from its earlier decisions, the Court also concluded that a prima facie case of purposeful discrimination in selection of the petit jury can be established under the facts of a defendant's case without showing a pattern of discrimination from previous trials. Batson, 476 U.S. at 96. The Supreme Court later ruled that the defendant and the

stricken juror do not have to share the same race in order to establish a <u>Batson</u> violation. <u>Powers v. Ohio</u>, 499 U.S. 400, 402 (1991). The Court's holding in <u>Powers</u> was based upon the fact that the juror's rights under the Equal Protection Clause are violated by being stricken from a jury because of his or her race, <u>id.</u> at 409, and that a defendant has standing to assert the juror's equal protection claim, <u>id.</u> at 415.

A few months later, the Court extended its holdings in <u>Batson</u> and <u>Powers</u> to civil cases. <u>Edmonson v. Leesville Concrete Co.</u>, 500 U.S. 614, 616 (1991). In doing so, the nation's highest court emphasized that "[r]acial discrimination has no place in the courtroom, whether the proceeding is civil or criminal. . . . The Constitution demands nothing less." <u>Id.</u> at 630 (internal citations omitted).

The U.S. Supreme Court in <u>Batson</u> outlined a three-part analysis to assist trial courts in determining whether a peremptory challenge was exercised improperly based upon the race of a potential juror. 476 U.S. at 93-98. First, the party raising the equal protection challenge must establish a prima facie case of purposeful discrimination. <u>Id.</u> at 93-94. This can be done by relying solely on the facts in the particular case at issue without showing a pattern of discrimination. <u>Id.</u> at 95. Trial courts were instructed to "consider all relevant circumstances" in deciding whether a party has presented a prima facie case of discrimination. <u>Id.</u> at 96. The <u>Batson</u> court noted that:

> For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during <u>voir</u> <u>dire</u> examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative.

<u>Id.</u> at 97. After the complaining party makes a prima facie showing of discrimination, the burden shifts to the opposing party to offer a neutral explanation for challenging the jurors. <u>Id.</u> The reasons given "need not rise to the level justifying exercise of a challenge for cause," the Supreme Court stated. <u>Id.</u> In fact, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible." <u>Purkett v. Elem</u>, 514 U.S. 765, 767-68 (1995). Rather, the trial court is instructed to look at the "facial validity" of the reason given for challenging the juror. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." <u>Id.</u> at 768 (quoting <u>Hernandez</u>, 500 U.S. at 360). Thus, a prosecutor's assertion that he struck a juror because the juror had long, unkempt hair, a mustache, and a goatee was deemed a race-neutral reason for exercising a peremptory challenge. <u>Id.</u> at 769. However, a lawyer cannot rebut the complaining party's prima facie case of discrimination by denying a discriminatory motive or affirming the lawyer's good faith. <u>Batson</u>, 476 U.S. at 98. The Supreme Court stated that the opposing party "must articulate a neutral explanation related to the particular case being tried." <u>Id.</u> That explanation must be a "'clear and reasonably specific' explanation of [the lawyer's] 'legitimate reasons' for exercising the challenges." <u>Id.</u> at 98 n.20 (quoting <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 258 (1981)).

In the final step of the Supreme Court's Batson analysis, the trial court must then decide if the complaining party has established purposeful discrimination. Batson, 476 U.S. at 98. As we have noted, a trial court may not simply accept a gender-neutral reason at face value; instead, it is the trial court's responsibility to examine the lawyer's justification for the challenges in context to ensure that the reason is not merely pretextual. Hugueley, 185 S.W.3d at 368 (citing Miller-El v. Dretke, 545 U.S. 231 (2005)); see also Woodson, 916 S.W.2d at 904. As we have noted previously, the trial court should make a thorough record of the proceedings and its findings regarding the challenged juror(s) at each stage of the Batson analysis:

> The trial judge must carefully articulate specific reasons for each finding on the record, i.e., whether a prima facie case has been established; whether a neutral explanation has been given; and whether the totality of the circumstances support a finding of purposeful discrimination. The trial court's factual findings are imperative in this context. On appeal, the trial court's findings are to be accorded great deference and not set aside unless clearly erroneous. See In re A.D.E., 880 S.W.2d 241, 243 (Tex. App. 1994). Thus, specificity in the findings is crucial.

Woodson, 916 S.W.2d at 906.

In the case at bar, twenty-nine members of the venire were called for questioning during voir dire.[2] Of these twenty-nine potential jurors, seven were excused by the trial court for cause, leaving ten women and twelve men. The record does not indicate the racial or gender composition of the entire venire, nor the total number of venirepersons called for jury duty in this trial. The Plaintiff was entitled to four peremptory challenges, while the Defendants had eight peremptory challenges. Tenn. Code Ann. § 22-3-105 (1994). On the first round of peremptory challenges, the Defendants struck four women – Ms. McIntosh, Ms. McKinney, Ms. Bryant, and Ms. Craig. Of those, the record indicates that Ms. Craig was African-American.[3] During the second round, the Defendants struck two more women, one of whom, Ms. Frazier, was African-American. At this time, the Plaintiff's counsel apparently lodged a Batson objection, which was not acted upon by the trial court.[4] During the third round of peremptory challenges, the Plaintiff struck one member of the venire. After both parties tendered their fourth round of challenges but before the trial court announced the dismissal of those challenged jurors, the Plaintiff's counsel renewed his earlier objection to the Defendants'

---

[2] The thirtieth venireperson called for questioning after selection of the petit jury became the alternate juror, as no peremptory challenges were exercised by either side during this part of voir dire.

[3] Although it is not relevant to the issues before us, we note that the Plaintiff exercised three of her four peremptory challenges during voir dire.

[4] The record is somewhat confusing in this regard. There is nothing in the transcript after the second round of peremptory challenges that reflects a Batson challenge. However, after the third round of challenges, the Plaintiff's counsel renewed its Batson objection and the trial court acknowledged that the objection had been issued initially after the second round of peremptory challenges.

exclusion of African-American jurors. The following discussion was held between the trial court and counsel at the bench but outside the hearing of the venire:

> **Plaintiff's Counsel:** Your Honor, I've got one other concern. I issued a <u>Batson</u> challenge on the last round. It appears –
>
> **The Court:** I'm sorry. You sure did.
>
> **Plaintiff's Counsel:** I would like the defendants to state some type of basis for their exclusion of the only two female African-Americans we've had on the jury pool today. The jury pool, which I would suggest to the Court, at the maximum 11 African-Americans in the jury pool of Tipton County. And I would challenge the defendants at this point to give a race-neutral basis for their systematic exclusion of the female African-Americans.
>
> **Defense Counsel:** I'd be happy to, Your Honor. As far as Ms. Frazier was concerned, I believe she was the one that had the difficulty remembering what kind of – what she decided on a previous jury case in a civil action. That causes me some concern, plus the fact that she had some family history with cancer.
>
> As far as Ms. Sneed, I was watching, and every single person that sat there and nodded their head the entire time that --
>
> **Plaintiff's Counsel:** Is this Ms. Craig?
>
> **Defense Counsel:** Ms. Sneed is now open.
>
> **Plaintiff's Counsel:** Did you just strike her?
>
> **Defense Counsel:** Yes.[5]
>
> **Plaintiff's Counsel:** Your Honor, I renew my objection.
>
> **Defense Counsel:** As far as Ms. Sneed, Your Honor, she was one of the people that I noticed was nodding her head all throughout the portion of [the Plaintiff's counsel's] examination. I've got other people like Ms. McIntosh nodding head. Ms. Craig, also Ms. Bryant nodding head. Your Honor, that's the reason why.

---

[5]The record indicates that Ms. Sneed, also an African-American woman, was peremptorily challenged by the Defendants during the fourth round of challenges, which had been tendered to the trial court but not yet announced at the time of the Plaintiff's <u>Batson</u> objection.

**Plaintiff's Counsel:** Just for the record, I would like to say I didn't know he had included Ms. Sneed. I would say out of the three African-American females that have been seated on this jury, this defendant has systematically excluded African-American females from the jury pool of a jury pool that consisted of a maximum of 11 African-Americans to begin with. He systematically excluded or struck each African-American in the jury, or potential jurors, with no race-neutral basis, and it's basically nothing more than an attempt to select an all-white jury to try this case.

**Defense Counsel:** First of all, Your Honor, I take personal offense about the allegation of systematic elimination of African-Americans. I've never been accused of that ever before in my professional career. But to get to the meat of the matter, I've had justification for each and every one of my strikes.

If your honor, in order to clear the record, wants us to withdraw our objection as to Ms. Sneed, I'm happy to do that since that's primarily based on the head nodding, which I have, just frankly, struck everybody that did that.

**The Court:** The Court will accept that as a race-neutral reason. If you still want to use that strike, you can.

**Plaintiff's Counsel:** My co-counsel says stay with it.

Because the Defendants explained their reasons for the peremptory challenges without prompting by the trial court, the trial court did not make a determination that the Plaintiff had established a prima facie case of purposeful discrimination, nor was such a ruling necessary under the circumstances. See Hernandez, 500 U.S. at 359 (quoting United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983)) ("Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant."). Therefore, we will proceed to a review of the second and third steps of the Batson analysis, where the burden shifts to the challenging party to provide a nondiscriminatory reason for its strikes and then the trial court must determine whether the opponent of the strikes has proved a discriminatory motive.

Regarding Ms. Frazier, the Defendants stated that they struck her from the jury pool because she could not remember what the verdict had been when she was a juror in a previous civil case. The Defendants also stated that Ms. Frazier had some family history with cancer, which contributed to their decision to peremptorily challenge her. The Defendants' questioning of Ms. Frazier regarding her jury service follows:

**Defense Counsel:** Okay. Now, just so you will know – by the way, jury experience, have y'all had previous jury experience? Raise your hand if you have.

**The Jurors:** (Showing of hands.)

-7-

**Defense Counsel:** Yes, ma'am. Did you serve as a juror in criminal or a civil case?

**Ms. Frazier:** Both.

**Defense Counsel:** Both?

**Ms. Frazier:** Uh-huh.

**Defense Counsel:** And in the civil case, so you're familiar with this difference in the burden of proof then?

**Ms. Frazier:** (Nods head affirmatively.)

**Defense Counsel:** In the civil case, do you remember if you found for the plaintiff or the defendant?

**Ms. Frazier:** It's been a while.

**Defense Counsel:** Okay. What kind of case? Was it a car wreck case?

**Ms. Frazier:** A car wreck – well, yeah, it was a car wreck.

**Defense Counsel:** Okay. Somebody else raised their hand. Yes, sir.

The Defendants failed to ask a non-African-American venireperson who had formerly been a juror in a civil case what the verdict in that case had been; thus, we question whether a potential juror's lack of memory about prior jury service was in fact an important consideration for the Defendants. In <u>State v. McFadden</u>, 191 S.W.3d 648, 653 (Mo. 2006), a prosecutor justified the peremptory challenge of a venireperson because the potential juror lived in a high-crime area but had never heard gunshots. The Missouri Supreme Court found this reason to be pretextual:

> [The juror's] recognition of a gunshot is irrelevant. Not only was the witnesses' recognition of a gunshot was [sic] not in dispute, but even if it were in dispute, it is unclear why a juror's lack of experience in hearing a gunshot is relevant. Additionally, had this issue been relevant, the State would have asked all venirepersons if they could recognize the sound of a gunshot. "[T]he State's failure to engage in any meaningful <u>voir</u> <u>dire</u> examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination."

<u>Id.</u> at 653-54 (quoting <u>Miller-El</u>, 545 U.S. at 246). The Defendants' failure to question another juror who had also served on a civil jury about the verdict in that case indicates that the first reason for excusing Ms. Frazier may have been pretextual. <u>See</u> <u>Miller-El</u>, 545 U.S. at 241 ("If a prosecutor's

proferred reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at <u>Batson</u>'s third step."). Furthermore, as in <u>McFadden</u>, the Defendants did not explain how Ms. Frazier's lack of memory regarding the outcome of a previous jury case was relevant to her participation as a juror in this trial. <u>See</u> <u>United States v. Jenkins</u>, 52 F.3d 743, 747 (8th Cir. 1995) ("Pretext can also be based on a finding that the factors used to explain the strike are irrelevant to a person's ability to perform as a juror in the particular case."). The Defendants' first reason for striking Ms. Frazier from the venire does not appear to be "related to the particular case being tried," as required by <u>Batson</u>, and thus appears to be pretextual. <u>See</u> <u>Batson</u>, 476 U.S. at 98; <u>Jenkins</u>, 52 F.3d at 747.

More importantly, however, we find that the Defendants' second reason for excusing Ms. Frazier – a family history of cancer – is not supported by the record. Although several members of the venire did acknowledge having friends or relatives affected by cancer, the record reflects that Ms. Frazier was not one of them. This incorrect reason for exercising a peremptory challenge concerns us as we evaluate the Defendants' motives in striking Ms. Frazier from the venire. <u>See</u> <u>George v. State</u>, 588 S.E.2d 312, 316 (Ga. Ct. App. 2003) ("Given that the evidence completely contradicts the prosecutor's characterization of the juror's job history as unstable, we can conclude only that this race-neutral reason is so implausible and fantastic as to render the explanation pretextual."). In addition, "the repeated use of vague, mistaken, and inconsistent explanations suggests that the State's reasons are pretextual." <u>People v. Blackwell</u>, 665 N.E.2d 782, 788 (Ill. 1996) (citing <u>People v. Hope</u>, 589 N.E.2d 503 (Ill. 1992)). Because the Defendants' reasons for excusing Ms. Frazier appear to be inconsistent and based on incorrect information, we hold that the trial court erred in finding that the Defendants gave a legitimate race-neutral reason for peremptorily challenging Ms. Frazier.

A <u>Batson</u> violation can be based on the improper challenge of even one juror. <u>See, e.g.</u>, <u>J.E.B. v. Alabama</u>, 511 U.S. 127, 142 n.13 (1994) ("The exclusion of even one juror for impermissible reasons harms that juror and undermines public confidence in the fairness of the system."). Therefore, we need not consider whether the Defendants' reason for excusing the other two African-American members of the venire satisfies the requirements of <u>Batson</u>.

### Gender-based <u>Batson</u> Claim

After overruling the Plaintiff's first <u>Batson</u> objection, the trial court excused Ms. Sneed, who had been peremptorily challenged by the Defendants, and one venireperson challenged by the Plaintiff. With twelve jurors selected, the trial judge then called for a short recess. When the proceedings resumed, the Plaintiff's counsel made a second <u>Batson</u> challenge as follows:

> **Plaintiff's Counsel:** Your Honor, at this point I would renew my motion as to my previous <u>Batson</u> challenge as to the voir dire of this jury selection process by the defendant. I would say to the Court, out of the seven, I believe seven challenges that were issued, either all but one were females that they challenged during the

peremptory challenges, and I would say on that basis there has been as a result a process of eliminating females from the jury systematically by the defendants in this case. Not necessarily African females. In retrospect, all females. So I would say the record speaks for itself. I would state to the Court out of the, I believe the number is seven that were challenged. I believe the only male they informed me of was Mr. Smith, who was a male.

Aside from that, Your Honor, at this point I would move for, I don't know if the term is mistrial or have this jury dismissed, have a new jury empaneled to properly pick a jury which is a cross-section of the community including males and females, not purely a male-dominated jury involved in a case in which we have a female plaintiff alleging complications or a misdiagnosis of breast cancer, which will eventually lead to death. That's my basis, Your Honor. I would ask the Court to dismiss this jury and to reconvene the jury panel and select another jury to proceed to trial.

**The Court:** I guess for the record I should say that there are currently four females and seven males empaneled.

Does the defendant have any response?

**Defense Counsel:** Well, I'm glad, Your Honor, that the <u>Batson</u> challenge has been I guess removed as far as race, and we did strike at least one male that I have notes on. We certainly were not – that wasn't the determining factor. If the Court wants me to go back through each and every challenge, I think I can refer to my notes and come up with that. But we do have four female jurors on this jury.

And we went through the same process [the Plaintiff's counsel] did. And I don't go back and take a look at his challenges, if they were all men or not. But we had a fair representation of the community here, and there was no systematic [sic] for race or sex factor, just all based on experience and body mechanics.

**The Court:** I guess for the record the plaintiff exercised all four challenges, and they were all male.[6]

**Plaintiff's Counsel:** Thank you, Your Honor.

**The Court:** Okay. Is there anything else?

**Plaintiff's Counsel:** No, Your Honor.

---

[6]The record indicates that the Plaintiff exercised only three of its four peremptory challenges.

**The Court:**  Are you serious about your motion for a mistrial and to reconvene at another term?  The case was set at this term after a continuance of a couple of weeks at your request due to the medical condition of your plaintiff.

**Plaintiff's Counsel:**  Yes, sir.

**The Court:**  Okay.  If there is nothing else, we'll proceed.

In J.E.B. v. Alabama, 511 U.S. at 129, the Court held that gender discrimination in the jury selection process also violates the Equal Protection Clause.  The Court elaborated:

> Equal opportunity to participate in the fair administration of justice is fundamental to our democratic system.  It not only furthers the goals of the jury system.  It reaffirms the promise of equality under the law – that all citizens, regardless of race, ethnicity, or gender, have the chance to take part directly in our democracy.  When persons are excluded from participation in our democratic processes solely because of race or gender, this promise of equality dims, and the integrity of our judicial system is jeopardized.

Id. at 145-46 (internal citation omitted).  The Court stated that the analysis it had developed in Batson should also be applied to claims of gender discrimination in jury selection.  Id. at 144-45; Hugueley, 185 S.W.3d at 376.

In this case, the trial judge did not explicitly find that the Plaintiff had established a prima facie case of purposeful discrimination.  However, we conclude that the trial court did implicitly make that determination, given the fact that the trial court asked the Defendants to respond to the Plaintiff's Batson objection.  See Woodson, 916 S.W.2d at 905 ("While the procedure used by the trial judge created difficulties, we must conclude that the trial judge determined that a prima facie case of purposeful discrimination had been established.  Otherwise, the court would not have required defendants to explain the challenge.").  The trial court also failed to make a finding of whether the Plaintiff carried her burden of proving a discriminatory motive by the Defendants.  Because the trial court empaneled the jury and allowed the trial to proceed after the Plaintiff's objection, we conclude that the trial court found the Defendants had provided a gender-neutral reason for their challenges.  However, we stress again the importance of the trial court making detailed findings for the record; doing so would have clarified the basis for the trial court's implicit rulings in this case and simplified the review process on appeal.

When asked to respond to the Plaintiff's Batson challenge, the Defendants denied any discriminatory motive in exercising their peremptory challenges, then stated that the challenges were "all based on experience and body mechanics."  As we discussed in the previous section, a prima facie case of purposeful discrimination may not be rebutted by a mere assertion of good faith or denial of a discriminatory purpose.  See Batson, 476 U.S. at 98.  Thus, we are left to decide whether

the trial court erred by concluding that "experience and body mechanics" were sufficient reasons under Batson to exercise peremptory challenges of six women on the venire.

As an initial matter, we note that in order to meet the requirements of Batson, a race- or gender- neutral reason for exercising a peremptory challenge must be clear, reasonably specific, legitimate, and related to the particular case being tried. See id. Here, the record does not indicate whether the Defendants were referring to the experiences of particular jurors or the trial experiences of counsel when they gave "experience" as one of the justifications for challenging the six women who were the basis for the Plaintiff's second Batson objection. Even if we knew which of these two possible meanings the Defendants intended, this reason would still be too vague to justify the exercise of a peremptory challenge. See, e.g., People v. Reynoso, 74 P.3d 852, 858 (Cal. 2003) (stating that a trial court should not relieve the opposing party of its burden to offer a neutral reason for exercising a peremptory challenge "by readily accepting vague explanations"). This leaves us to determine whether "body mechanics" is a sufficient reason under Batson to justify the Defendants' peremptory challenges of six women on the venire.

We are aware that lawyers routinely take note of a venireperson's body language during voir dire and use that as a factor in exercising a peremptory challenge. See, e.g., Barfield v. Orange County, 911 F.2d 644, 646 (11th Cir. 1990); United States v. Ruiz, 894 F.2d 501, 506 (2d Cir. 1990); State v. Seals, 684 So.2d 368, 375 (La. 1996); State v. Carroll, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000); State v. Butler, 795 S.W.2d 680, 687 n.4 (Tenn. Crim. App. 1990) (citing State v. Hood, 780 P.2d 160, 166 (Kan. 1989)). However, in order to avoid a Batson violation, it is important that counsel specifically state the particular body language that forms the basis for a peremptory challenge:

> An impression of the conduct and demeanor of a prospective juror during the voir dire may provide a legitimate basis for the exercise of a peremptory challenge. The fact that a prosecutor's explanations in the face of a Batson inquiry are founded on these impressions does not make them unacceptable if they are sufficiently specific to provide a basis upon which to evaluate their legitimacy. Yet, because such after-the-fact rationalizations are susceptible to abuse, a prosecutor's reason for discharge bottomed on demeanor evidence deserves particularly careful scrutiny. Prosecutors would be well advised – when contemplating striking a juror for reasons of demeanor – to make contemporaneous notes as to the specific behavior on the prospective juror's part that renders such person unsuitable for service on a particular case.

Brown v. Kelly, 973 F.2d 116, 121 (2d Cir. 1992) (citing United States v. Sherrills, 929 F.2d 393, 395 (8th Cir. 1991)).

Although observations of a juror's body language may prompt a peremptory challenge, a trial court should evaluate such reasons thoroughly. Courts of this state and other jurisdictions have recognized that "neutral explanations that are based on subjective assessments, such as the juror's

demeanor, must be carefully scrutinized." State v. Scott, No. W2002-01324-CCA-R3-CD, 2003 WL 21644414, at *3 (Tenn. Crim. App. July 8, 2003) (citing Jenkins, 52 F.3d at 746). See also Sherrills, 929 F.2d at 395. In State v. Hood, which has been cited with approval by our Court of Criminal Appeals, the Supreme Court of Kansas stated as follows regarding body language as a basis for peremptorily challenging a potential juror:

> Hostility toward the prosecution, as evidenced by oral responses, tone of voice, sitting with arms crossed, leaning forward when defense counsel conducts voir dire, or leaning back while the prosecution asks questions, is a matter which the trial court may take into consideration in determining whether the prosecutor has a valid and neutral reason for striking the juror. . . . Again, however, the trial judge must be particularly sensitive when body language, alone, is advanced as a reason for striking a juror . . . .

780 P.2d at 166. Courts have accepted a wide variety of body-language-related reasons for striking a juror from the venire, finding that they satisfied the requirements of Batson. See, e.g., Jenkins, 52 F.3d at 745 (challenged jurors "scowled at government attorneys and agents during voir dire" and "their body language and facial expressions indicated disinterest in the proceedings"); Barfield, 911 F.2d at 648 (juror displayed hostile facial expressions during voir dire); Ruiz, 894 F.2d at 506 (juror "made facial expressions during voir dire suggesting that she really did not want to sit [on the jury]" (internal quotation marks omitted)); Carpenter v. Michigan, No. 1:06-CV-500, 2006 WL 3446564, at *3 (W.D. Mich. Nov. 28, 2006) (juror was evasive when answering questions, sat with arms crossed, and "[h]er whole body language told [the attorney] she didn't want to be here"); Carroll, 34 S.W.3d at 319 (juror was non-assertive and failed to make eye contact).[7]

However, the Defendants' reliance on "body mechanics" as a reason for striking six of the ten women in the venire differs markedly from the explanations that have been found acceptable under Batson. The Defendants failed to describe particular displays of body language – such as scowling at the attorneys, failing to make eye contact, falling asleep during voir dire, and so forth – that provided the basis for excusing the female jurors. As we have already noted, in order to satisfy the requirements of Batson, an attorney's justification for exercising a peremptory challenge must be clear, reasonably specific, legitimate, and related to the particular case being tried. See Batson, 476 U.S. at 98. The Defendants' explanation in this case does not meet that standard. Therefore, we find that the trial court erred in overruling the Plaintiff's second gender-based Batson objection.

---

[7]We note that many, if not most, explanations offered to justify peremptory strikes will satisfy the low threshold set forth in Purkett, 514 U.S. at 767-68, for the second part of the Batson analysis. However, this does not end the inquiry; rather, trial courts must then proceed to the third step of the Batson analysis and determine whether the opponent of the strike has met his or her burden of proving purposeful discrimination. "At that [third] stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Id. at 768 (parenthetical in original).

Our rulings on the Plaintiff's <u>Batson</u> objections necessitate our remand of this case for a new trial. Tenn. R. App. P. 13(b) (2006); <u>see also</u> <u>State v. Spratt</u>, 31 S.W.3d 587, 598 (Tenn. Crim. App. 2000). Therefore, we need not address the Plaintiff's remaining four issues on appeal.

### III. Conclusion

By virtue of the United States Constitution and Tennessee law, Ms. Zakour was entitled to a fair and impartial jury to try her case – a jury selected without regard to race or gender. After careful review, we find that she was denied this fundamental right when the trial court erroneously overruled her counsel's Batson objections during voir dire. Accordingly, we reverse the judgment of the trial court and remand for a new trial. All costs of appeal are taxed against the Defendants, UT Medical Group, Inc., and Scott Craig, M.D., and their sureties, for which execution may issue if necessary.

_____
SHARON G. LEE, SPECIAL JUSTICE