IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
August 7, 2019 Session

**STATE OF TENNESSEE v. JOAN ODELL**

**Appeal from the Circuit Court for Dyer County
No. 17-CR-198      R. Lee Moore, Jr., Judge**

_____

**No. W2018-01341-CCA-R3-CD**

_____

The Defendant, Joan Odell, appeals from her felony conviction for failure to appear, which resulted in a sentence of two years in the Tennessee Department of Correction. On appeal, the Defendant asserts that the evidence is insufficient to support her conviction and challenges the jury instructions. She also contends that the State engaged in purposeful discrimination in striking a prospective juror in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We conclude that the evidence is sufficient to support the conviction and that there was no reversible error in the instructions. However, the trial court failed to comply with the procedure set forth in *Batson* by denying the Defendant's *Batson* claim based upon the Defendant's race, and we remand for a hearing on the issue.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;
Case Remanded**

JOHN EVERETT WILLIAMS, P.J., delivered the opinion of the court, in which NORMA MCGEE OGLE and CAMILLE R. MCMULLEN, JJ., joined.

James E. Lanier, District Public Defender; and Sean P. Day, Assistant District Public Defender, for the appellant, Joan Odell.

Herbert H. Slatery III, Attorney General and Reporter; Katharine K. Decker, Assistant Attorney General; Danny Goodman, Jr., District Attorney General; and Karen Burns, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL BACKGROUND**

According to the evidence presented at trial, the Defendant was on probation for a prior felony conviction; she was charged with violating the terms of her probation; and she failed to appear at the probation hearing. A probation violation warrant was filed on March 2, 2017; the Defendant was arrested on the warrant on March 6th; and a bond in the amount of $5,000 was set. On March 20th, Ms. Lillie Cooper with Volunteer Bonding posted the bond on the Defendant's behalf.

The Defendant signed an appearance bond, which listed her court date as April 11, 2017, at 9:00 a.m. Ms. Cooper testified that she obtained the court date from the intake sheet at the Dyer County Sheriff's Office. She stated that by signing the appearance bond, the Defendant agreed to appear at the court hearings and to contact the bonding company if her address changed. Ms. Cooper said she provided the Defendant with a document that listed the date of the hearing as April 11, 2017, at 9:00 a.m., as well as the location of the hearing.

The Defendant failed to appear at the April 11th hearing, and the trial court entered an order revoking and forfeiting the Defendant's bond. Based upon the trial court's order, a capias was issued for the Defendant's arrest, and a scire facias was issued to the bonding company, notifying the company of the Defendant's failure to appear.

Ms. Cooper, who was present at the April 11th hearing, attempted to contact the Defendant when she failed to appear but was unable to reach her. Ms. Cooper was able to reach one of the Defendant's contacts listed on her bond application, and the contact informed Ms. Cooper of the Defendant's location. Ms. Cooper testified that the Defendant had changed addresses but had failed to inform Ms. Cooper of the change. Ms. Cooper went to the apartment where the Defendant was located and transported her to jail.

On cross-examination, Ms. Cooper testified that she was able to quickly locate the Defendant, who was in Dyer County. Ms. Cooper stated that when she arrived at the Defendant's address, the Defendant appeared confused and assumed that Ms. Cooper was there to take her to court. The Defendant informed Ms. Cooper that the Defendant had arranged for someone to take her to court but that the person had not come. Ms. Cooper agreed that the Defendant did not appear to be attempting to abscond but that the Defendant seemed "very confused in her thinking." Ms. Cooper testified on redirect examination that she did not have a prior agreement with the Defendant to transport her to court for her hearing.

Both Ms. Cooper and Ms. Bridgette Brown, a deputy clerk at the Dyer County Circuit Court Clerk's Office, agreed that in the past, some defendants who had posted bond had expressed confusion or a misunderstanding regarding their initial court dates.

Ms. Cooper and Ms. Brown testified that the April 11th court date was the correct date, and Ms. Cooper stated that the date was provided to the Defendant.

The Defendant testified that she had arranged for someone to drive her to court but that the person did not arrive to take her to court until Ms. Cooper arrived. On cross-examination, the Defendant acknowledged that she signed the appearance bond, which listed her court date as April 11, 2017 at 9:00 a.m. She also acknowledged that she did not arrange for Ms. Cooper to transport her to court for her hearing and that Ms. Cooper happened to show up at the Defendant's address. When questioned by the State regarding her failure to inform the bonding company of her change in address, the Defendant stated that her brother, who had arranged for the bonding company to post her bond, listed "that address" on papers provided to the bonding company.

The Defendant acknowledged that she had prior convictions for theft of property valued at under $500 and for writing bad checks. She denied being convicted of criminal impersonation in 2008. She acknowledged that in January 2016, she entered an *Alford* plea to theft of property valued over $10,000, a Class C felony, but maintained that it was a "false charge." She acknowledged that she was on probation for this conviction when the probation violation warrant was issued. The State presented certified judgments of her conviction for criminal impersonation in 2008 and her felony theft conviction.

The jury convicted the Defendant of failure to appear, and the trial court imposed a two-year sentence to be served consecutively to her prior sentences. The Defendant filed a motion for new trial, which the trial court denied. The Defendant appeals, challenging the sufficiency of the evidence and the jury instructions. The Defendant also contends that the State engaged in purposeful discrimination in striking a prospective juror in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986).

**ANALYSIS**

**I. Sufficiency**

The Defendant contends that the evidence is insufficient to support her conviction, asserting that her absence from the probation revocation proceeding did not constitute failure to appear as criminalized in Tennessee Code Annotated section 39-16-609. The Defendant relies upon former subsection (d), which provides that failure to appear is a Class A misdemeanor "[i]f the occasion for which the defendant's appearance is required is a misdemeanor," and upon former subsection (e), which provides that failure to appear is a Class E felony "[i]f the occasion for which the defendant's appearance is required is a

Class A misdemeanor or a felony."[1] T.C.A. § 39-16-609(d), (e) (2014). The Defendant maintains that because the violation of probation is not classified as either a misdemeanor or a felony offense, the failure to appear at a probation revocation proceeding is not a criminal offense pursuant to section 39-16-609.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "'the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom.'" *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Therefore, this court will not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Instead, it is the trier of fact, not this court, who resolves any questions concerning "the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Evans*, 838 S.W.2d 185, 191 (Tenn. 1992). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

The Defendant's assertion that her absence from the probation violation hearing does not constitute the offense of failure to appear as provided in Tennessee Code Annotated section 39-16-609 involves an issue of statutory construction. Issues of statutory construction are questions of law, which this court reviews de novo with no presumption of correctness. *State v. Henderson*, 531 S.W.3d 687, 692 (Tenn. 2017) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013)). In interpreting a statute, we must "ascertain and effectuate" the intent of the Legislature. *Id.* (citing *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013)). We must accord the words of the statute

---

[1] Shortly before oral arguments in this case, Tennessee Code Annotated section 39-16-609 was amended, effective July 1, 2019, to provide that the offense of felony failure to appear is a Class A misdemeanor. *See* T.C.A. § 39-16-609(d) (Supp. 2019). The parties do not raise any issues regarding the effect of this amendment.

"their natural and ordinary meaning" and construe the statute "in a reasonable manner which avoids statutory conflict." *Id.* (citing *Baker*, 417 S.W.3d at 433). "'[W]e presume that every word in the statute has meaning and purpose and should be given full effect if the obvious intent of the General Assembly is not violated by so doing.'" *Id.* (quoting *Larsen-Ball v. Ball*, 301 S.W.3d 228, 232 (Tenn. 2010)). If the statute's language is clear and unambiguous, "'the legislative intent shall be derived from the plain and ordinary meaning of the statutory language.'" *Id.* (quoting *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)). If the statute's language is ambiguous, we must examine the entire statutory scheme and "rely upon well-established canons of statutory construction in order to ascertain the legislative intent." *Id.* (citing *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *Wilson*, 132 S.W.3d at 341).

As applicable to the present case, Tennessee Code Annotated section 39-16-609(a) prohibits a person from knowingly failing to appear "as directed by a lawful authority if the person … [h]as been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding or penal institution at a specified time or place[.]" T.C.A. § 39-16-609(a)(4) (2014). "'Official proceeding' means any type of administrative, executive, legislative or judicial proceeding that may be conducted before a public servant authorized by law to take statements under oath." T.C.A. § 39-11-106(a)(25). A probation revocation hearing falls within the broad definition of an "official proceeding." *See* T.C.A. § 40-35-311 (setting forth the procedure to revoke the suspension of a sentence or probation).

The Defendant relies upon section 39-16-609(d) and (e) in support of her contention that her failure to appear at the probation revocation proceeding did not constitute a criminal offense. At the time of the commission of the offense, subsection (d) provided that the failure to appear is a Class A misdemeanor "[i]f the occasion for which the defendant's appearance is required is a misdemeanor," and subsection (e) provided that the failure to appear is a Class E felony "[i]f the occasion for which the defendant's appearance is required is a Class A misdemeanor or a felony." T.C.A. § 39-16-609(d), (e) (Supp. 2014). The Defendant asserts that because the violation of probation is neither a misdemeanor nor a felony, the failure to appear at a probation revocation proceeding, the occasion for which the Defendant's appearance was required, is not subject to criminal penalty.

Former subsections (d) and (e), however, are not elements of the offense of failure to appear but relate to punishment for the offense. The Sentencing Commission Comments to section 39-16-609 state, "Punishment for this offense depends on whether the crime for which the offender failed to appear is a misdemeanor or a felony." T.C.A. § 39-16-609, Sentencing Comm'n Cmts. (Supp. 2014). Rather, the elements of the offense of failure to appear are included in section 39-16-609(a).

Furthermore, "a probation revocation proceeding is a continuation of the criminal prosecution." *Allen v. State*, 505 S.W.2d 715, 719 (Tenn. 1974); *State v. Dinnie Merel Robertson*, No. M2016-02409-CCA-R3-CD, 2018 WL 4361132, at *14 (Tenn. Crim. App. June 12, 2018), *no perm. app. filed*. The issue in a probation revocation proceeding involves whether a defendant violated the terms of his or her probation that was imposed as an alternative to incarceration for a criminal conviction. *See* T.C.A. §§ 40-35-303 (providing the qualifications for probation and a trial court's authority to impose probation as part of its sentencing determination); 40-35-311 (setting forth the procedure for probation revocation proceedings). If the trial court concludes that a defendant has violated the conditions of probation, the trial court "has the authority to revoke the defendant's probation and cause execution of the original judgment." *State v. Hunter*, 1 S.W.3d 643, 646 (Tenn. 1999) (citing T.C.A. § 40-35-311). An order revoking the suspension of a sentence and probation does not impose a new sentence but "typically ends the period of suspension of the execution of the original term and mandates that the original sentence be carried out." *Young v. State*, 101 S.W.3d 430, 432 (Tenn. 2002) (citing T.C.A. §§ 40-35-310, -311); *see Carpenter v. State*, 136 S.W.3d 608, 611 (Tenn. 2004). Thus, a probation revocation proceeding concerns the service of a defendant's sentence for a criminal conviction.

While the Defendant is correct that the violation of the terms of probation is not a separate criminal offense that is classified as a misdemeanor or a felony, we conclude that a conviction for a felony failure to appear is not limited to a defendant's failure to appear at hearings on pending charges for criminal offenses. Rather, the language in section 39-16-609, when considered in conjunction with the broad definition of "official proceeding" in section 39-11-106(a)(25), evidences the legislature's clear intent that section 39-16-609 broadly apply to the failure to appear at any official proceeding, including a probation revocation proceeding. Furthermore because a probation revocation proceeding concerns sentencing for a conviction and is the continuation of the criminal prosecution of that offense, we conclude that the underlying conviction for which probation was imposed determines whether the failure to appear at the probation revocation proceeding is subject to punishment as a Class A misdemeanor or a Class E felony pursuant to former subsections 39-16-609(d) and (e). To adopt the Defendant's proposed interpretation of the statute would lead to an absurd result that probation violators alone could not be prosecuted for their failure to appear at probation revocation hearings. "The courts in Tennessee have adopted the traditional rule that 'we will not apply a particular interpretation to a statute if that interpretation would yield an absurd result.'" *In re Estate of Tanner*, 295 S.W.3d 610, 625 n.14 (Tenn. 2009) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). Rather, our conclusion is consistent with the legislature's clear intent that section 39-16-609 broadly apply to the failure to appear at any official proceeding.

The State charged in the indictment that the Defendant failed to appear at a probation violation hearing on a felony conviction. At trial, the State presented evidence establishing that the Defendant knowingly failed to appear at the probation revocation hearing. The State presented evidence through the testimony of Ms. Brown that the probation hearing was based on a felony conviction, and the Defendant affirmed on cross-examination that she was on probation for a felony conviction of theft of property valued over $10,000. Accordingly, the evidence is sufficient to support the Defendant's conviction for failure to appear as a Class E felony.

## II. Jury Instructions

The Defendant also contends that the trial court failed to properly instruct the jury as to the elements of the offense of failure to appear. Specifically, she maintains that the trial court erred in failing to instruct the jury that it must determine that the occasion for which the Defendant was required to appear was a misdemeanor or a felony as an essential element of the offense of failure to appear pursuant to Tennessee Code Annotated section 39-16-609(e) (Supp. 2014). The Defendant also argues that even if the determination of the occasion for which she was required to appear was for purposes of sentencing, the jury was still required to make such a determination. The State responds that the trial court properly instructed the jury and that any error was harmless.

As we have stated above, the determination of whether the occasion for which a defendant was required to appear was a misdemeanor or a felony relates to punishment for the offense of felony to appear as provided in former subsections (d) and (e) of Tennessee Code Annotated section 39-16-609 and is not an element of the offense itself. Furthermore, this court previously has held that such an instruction is not required when the defendant's failure to appear related to a prior conviction. *See State v. Nora Hernandez*, No. M2012-02383-CCA-R3-CD, 2013 WL 5567083, at *5 (Tenn. Crim. App. Oct. 7, 2013).

The Defendant argues that the trial court's failure to instruct the jury violated the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), in which the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *See also Blakely v. Washington*, 542 U.S. 296, 301-04 (2004). However, we conclude that any error regarding the jury instructions is harmless beyond a reasonable doubt. *See State v. James D. Wilson*, No. M2007-01854-CCA-R3-CD, 2009 WL 2567863, at *12 (Tenn. Crim. App. Aug. 20, 2009) (recognizing that *Apprendi/Blakely* violations are subject to constitutional harmless error analysis). The Defendant conceded at trial that she was on probation as a result of a conviction for theft of property valued at over $10,000, a Class

C felony, and a copy of the judgment for that felony conviction was admitted as an exhibit. Accordingly, we conclude that "'it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *State v. Rodriguez*, 254 S.W.3d 361, 371 (Tenn. 2008) (quoting *State v. Allen*, 69 S.W.3d 181, 190 (Tenn. 2002) (internal quotation marks omitted)). Accordingly, the Defendant is not entitled to relief regarding this issue.

### III. *Batson* Challenge

The Defendant contends that the State improperly used a peremptory challenge to strike an African-American juror on the basis of race in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). The State responds that the trial court did not err in overruling the Defendant's objection to the State's use of the peremptory challenge.

### A. Proceedings in the Trial Court

During voir dire, the prosecutor asked the collective group of prospective jurors a series of questions. Defense counsel also questioned the prospective jurors as a group and then asked specific questions of individual jurors, none of whom were the challenged juror. During the first round of challenges, defense counsel exercised three peremptory challenges, and the State did not exercise any challenges. The trial court excused one prospective juror for health reasons. The transcript does not reflect that the excused jurors were replaced, and the parties did not question the prospective jurors further.

During the second round of challenges, the prosecutor exercised one peremptory challenge on an African-American man, and defense counsel objected. The following exchange occurred:

> [DEFENSE COUNSEL]: Your Honor, I need to have a *Batson* challenge on that.
>
> THE COURT: For what reason?
>
> [DEFENSE COUNSEL]: Your Honor, I don't have to have a reason. She has to provide the race-neutral reasons. This is the only black juror that's been struck.
>
> THE COURT: We don't have—
>
> [PROSECUTOR]: We don't have a black defendant.

THE COURT:  —a black defendant.

[PROSECUTOR]:  This is not a racial issue.

[DEFENSE COUNSEL]:  She still has to provide a race-neutral reason for striking him.

THE COURT:  What is your reason?

[PROSECUTOR]:  He has a bad attitude.  He will not answer any questions.  And—

[DEFENSE COUNSEL]:  In fact, none of us asked any questions posed to [the challenged juror].

THE COURT:  You didn't ask him any questions.

[PROSECUTOR]:  No, when I asked all of them, he would not respond. And he's acting somewhat aggressive.  Of course, I don't want to call him up.

THE COURT:  We can't do that.

[PROSECUTOR]:  Your Honor, that—*Batson* does not apply when we don't—we don't have any black—

[DEFENSE COUNSEL]:  *Batson* applies.

THE COURT:  Why do you think it applies?

[DEFENSE COUNSEL]:  I think *Batson* applies—I mean—

[PROSECUTOR]:  It doesn't.

[DEFENSE COUNSEL]:  —I mean, I don't think a juror—I don't think we can ever strike a juror on the basis of race—

THE COURT:  Your objection—

[DEFENSE COUNSEL]:  —regardless of the defendant.

THE COURT:  Your objection is noted.  Your objection will be overruled.

….

[PROSECUTOR]:  If that was the case, we could argue anybody, white males or white females, or anybody.

Following the trial, the Defendant raised the *Batson* issue in his motion for new trial.  During the hearing on the motion for new trial, the prosecutor argued:

First of all, I don't really feel that there was any race issue.  We have a white defendant, all white witnesses in the case.  There was one gentleman—I don't recall his name.  He was a black gentleman that got on.  I did move to strike him.  It had nothing to do with his race.  Race was not an issue in any way.  He was, as I talked to my witness who was sitting next to me—and I noticed he was acting very upset to be there.  He had his arms crossed.  He was shaking his head.  He was basically scowling, is the only word I can think of.  He was not—do I think it was aimed at me personally; I don't know.  He was very unhappy to be there, and it was obvious to anybody that saw him sitting in the courtroom.  I don't feel that he would be—or I didn't feel he would be a good juror for either side.  I didn't kick him off because he was black.  There is nothing that would lead me to believe that his race would have anything to do with listening to [the Defendant's] case, but it did make me believe that he did not want to be there and he would not be a good juror to participate for the day.

So that was a racially neutral reason.  If he had been a white man or a white woman and acted in that manner, I would have also used one of my peremptory challenges.  But it was simply because of his behavior.  He did not want to be there, or certainly didn't appear to be.

In denying the Defendant's motion for new trial, the trial court stated, "I don't think there's anything that went on in this trial to indicate that there is any discrimination."  In its written order denying the Defendant's motion for new trial, the trial court found that "[t]he State did not commit error in exercising peremptory challenges during voir dire."

## B.  Analysis

"Peremptory challenges, along with challenges for 'cause', are the principal tools that enable litigants to remove unfavorable jurors during the jury selection process." *State v. Spratt*, 31 S.W.3d 587, 598 (Tenn. Crim. App. 2000) (quoting *United States v.*

- 10 -

*Annigoni*, 96 F.3d 1132, 1137 (9th Cir. 1996), *overruled on other grounds as recognized in United States v. Lindsey*, 634 F.3d 541, 544 (9th Cir. 2011)). A peremptory challenge allows for the removal of jurors who may exhibit hostility or bias but whose removal for cause has not been established. *Id.*

However, the use of a peremptory challenge to remove a juror on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 89; *State v. Hugueley*, 185 S.W.3d 356, 368 (Tenn. 2006). In *Batson*, the United States Supreme Court established a three-step process that a trial court must undertake to determine whether a juror was improperly challenged on the basis of race. 476 U.S. at 97-98. First, the defendant must make a prima facie showing of purposeful discrimination against a venire member. *Id.* at 93-94. A defendant "may make out a prima facie case of purposeful discrimination by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose." *Id.* at 93-94. Under this first step, the defendant need not establish that the State's challenge was "more likely than not the product of purposeful discrimination." *Johnson v. California*, 545 U.S. 162, 170 (2005). A defendant can establish a prima facie case merely by demonstrating that the State excluded members of a cognizable racial group from the jury pool. *State v. Echols*, 382 S.W.3d 266, 281 (Tenn. 2012). Furthermore, "the exercise of even one peremptory challenge in a purposefully discriminatory manner would violate equal protection." *State v. Ellison*, 841 S.W.2d 824, 827 (Tenn. 1992) (concluding that *Batson* applied even though only one member of the venire belonged to the cognizable racial group).

If the defendant establishes such a prima facie case, the burden shifts to the State to articulate a race-neutral reason for excluding the juror or jurors. *Batson*, 476 U.S. at 97. The prosecutor may not merely assert that the reason for the challenge was not discriminatory. *Ellison*, 841 S.W.2d at 827. The State's race-neutral explanation "must be a clear and reasonably specific account of the prosecutor's legitimate reasons for exercising the challenge … [but] need not be persuasive, or even plausible." *Hugueley*, 185 S.W.3d at 368 (citing *Batson*, 476 U.S. at 97; *Purkett v. Elem*, 514 U.S. 745, 767-68 (1995)). The State's explanation need not include a reason that would justify excusing the juror for cause. *Batson*, 476 U.S. at 97. "'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race[-]neutral.'" *Hugueley*, 185 S.W.3d at 368 (quoting *Purkett*, 514 U.S. at 768).

Finally, if the State offers a race-neutral reason, the trial court must determine if the defendant has established purposeful discrimination. *Batson*, 476 U.S. at 98. This step requires that the trial court examine the State's reasoning to ensure it is not pretextual. *Hugueley*, 185 S.W.3d at 368. When considering this third step, "the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Hernandez v. New York*, 500 U.S. 353, 365 (1991). "'The trial

court may not simply accept a proffered race-neutral reason at face value but must examine the prosecutor's challenges in context to ensure that the reason is not merely pretextual.'" *State v. Kiser*, 284 S.W.3d 227, 255 (Tenn. 2009) (quoting *Hugueley*, 185 S.W.3d at 368).

"[D]etermination of the prosecutor's discriminatory intent or lack thereof turns largely on the evaluation of the prosecutor's credibility, of which the attorney's demeanor is often the best evidence." *State v. Smith*, 893 S.W.2d 908, 914 (Tenn. 1994); *see Flowers v. Miss.*, 139 S.Ct. 2228, 2243-44 (2019). The United States Supreme Court has recognized that a defendant may present a variety of evidence to support a claim that a prosecutor's peremptory strikes were made on the basis of race, including: (1) statistical evidence comparing the prosecutor's use of peremptory strikes against African-American jurors and Caucasian jurors in the case; (2) the prosecutor's disparate questioning of African-American and Caucasian jurors in the case; (3) "side-by-side comparisons" of African-American jurors who were struck and Caucasian jurors who were not challenged; (4) the "prosecutor's misrepresentations of the record when defending the strikes during the *Batson* hearing"; (5) relevant history of the State's use of peremptory strikes in past cases; or (6) any other relevant circumstance bearing upon the issue. *Flowers*, 139 S.Ct. at 2243. "When a prosecutor misstates the record in explaining a strike, that misstatement can be another clue showing discriminatory intent." *Id.* at 2250. A prosecution's shifting of reasons for the strike also suggests that the reasons may be pretextual. *Foster v. Chatman*, 136 S.Ct. 1737, 1751 (2016).

The State may rely upon a juror's demeanor or body language as a race-neutral reason for the exercise of a peremptory challenge. *See Snyder v. Louisiana*, 552 U.S. 472, 477 (2008); *Zakour v. UT Med. Group, Inc.*, 215 S.W.3d 763, 774-75 (Tenn. 2007). In such situations, "the trial court must evaluate not only whether the prosecutor's demeanor belies a discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor." *Snyder*, 552 U.S. at 477. However, the trial court is not required to reject a demeanor-based explanation if the trial court did not observe or cannot recall the juror's demeanor. *Thaler v. Haynes*, 559 U.S. 43, 48 (2010).

"[T]he ultimate burden of establishing purposeful discrimination lies with the party objecting to the peremptory challenge." *Hugueley*, 185 S.W.3d at 374 (citing *Batson*, 476 U.S. at 93). When ruling on a *Batson* challenge, the trial court must give specific reasons for each of its factual findings, including: (1) whether a prima facie case has been established; (2) whether a race-neutral reason for the challenge has been provided; and (3) whether the totality of the circumstances supports a finding of purposeful discrimination. *Id.* at 369 (citing *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 906 (Tenn. 1996)). The trial court's findings are to be accorded great

- 12 -

deference on appeal, and this court will not set aside those findings unless they are "clearly erroneous." *Woodson*, 916 S.W.2d at 906.

The Defendant contends that she established a prima facie showing of purposeful discrimination, that the prosecutor's purported reasons for challenging the juror were pretextual, and that the trial court failed to make specific findings to support its denial of the Defendant's *Batson* challenge. The Defendant suggests that the trial court's findings could be viewed as accepting the prosecutor's argument that *Batson* does not apply. The State responds that the trial court found that the prosecutor did not engage in purposeful discrimination and that the trial court's findings were not clearly erroneous.

During the exchange following defense counsel's objection at trial, the trial court did not make any findings regarding the three steps set forth in *Batson*. While defense counsel stated that he believed he did not have to make a prima facie showing, he also observed that the State had struck the sole African-American juror. Both the prosecutor and the trial court immediately stated that the Defendant was Caucasian, and the prosecutor argued that, as a result, *Batson* did not apply. The trial court then asked the prosecutor the reason for the challenge, which the Tennessee Supreme Court has recognized to amount to an implicit finding that a prima facie case has been demonstrated. *See Zakour*, 215 S.W.3d at 773. However, after providing several reasons, the prosecutor again argued that *Batson* did not apply. The trial court then questioned defense counsel as to why he believed *Batson* applied, and while defense counsel was answering the trial court's question, the trial court overruled the objection to the challenge. Accordingly, it appears that the trial court's decision was not based upon the application of the three-step test in *Batson* but upon a finding that the Defendant lacked standing to pursue a *Batson* claim because the Defendant is Caucasian. The record demonstrates that the prosecutor believed this was the basis for the trial court's decision when she commented, "If that was the case, we could argue anybody, white males or white females, or anybody."

The State relies upon the trial court's finding during the hearing on the Defendant's motion for new trial that "I don't think there's anything that went on in this trial to indicate that there is any discrimination" to support its claim that the trial court properly considered and rejected the Defendant's *Batson* claim based upon the three-step test. While the prosecutor offered a reason for the challenge of the juror during the hearing on the motion for new trial, the prosecutor again argued that *Batson* did not apply because the Defendant was Caucasian. Moreover, in light of the exchange at trial, we cannot conclude that the trial court's statement at the hearing constitutes a finding that the Defendant failed to meet his burden under *Batson*. Rather, the trial court's statement also could reflect that it believed that no discrimination occurred because *Batson* did not apply.

- 13 -

The premise that *Batson* did not apply because the Defendant is Caucasian runs directly contrary to twenty-eight years of jurisprudence. *See Powers v. Ohio*, 499 U.S. 400, 402, 416 (1991) (holding that a defendant and a stricken juror need not share the same race to establish a *Batson* violation and that the Caucasian defendant had standing to challenge the exclusion of an African-American juror); *Echols*, 382 S.W.3d at 281; *Zakour*, 215 S.W.3d at 767; *Hugueley*, 185 S.W.3d at 369 n.6; *Ellison*, 841 S.W.2d at 826; *State v. Carroll*, 34 S.W.3d 317, 319 (Tenn. Crim. App. 2000); *Cox v. State*, 880 S.W.2d 713, 718 (Tenn. Crim. App. 1994). The United States Supreme Court reasoned in *Powers* that "a prosecutor's discriminatory use of peremptory challenges harms the excluded jurors and the community at large." 499 U.S. at 406 (citing *Batson*, 476 U.S. at 87). An individual juror has the right not to be excluded from a jury on the basis of race, and "the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race." *Id.* at 409. The Court held that a defendant in a criminal case has third-party standing to raise equal protection claims of jurors excluded by the prosecution due to the jurors' race. *Id.* at 415.

The Tennessee Supreme Court has held that when a trial court finds, contrary to *Powers*, that a defendant lacks standing to pursue a *Batson* claim, the remedy is to remand the case to the trial court for a hearing to address the three-part test under *Batson*. *See Ellison*, 841 S.W.2d at 826. Thus, we remand the case to the trial court for such a hearing. At the hearing, the Defendant should be given the opportunity to proceed with his efforts to prove a violation. The trial court shall make specific findings, applying the principles set forth in this opinion.

## CONCLUSION

We reverse the judgment of the trial court and remand for a limited *Batson* hearing. If the trial court concludes that the Defendant has met his burden of establishing a *Batson* violation, the trial court shall grant the Defendant a new trial. If the trial court concludes that the prosecutor's exercise of the peremptory challenge did not violate *Batson*, the Defendant shall have the right to appeal the trial court's decision.

_____
JOHN EVERETT WILLIAMS, PRESIDING JUDGE